F. Bruce Easton and Another, Claimants, *v.* The State of New York, Defendant.

Claim No. 22287.

Court of Claims, November 5, 1934.

*Ives & Craft,* for the claimant.

*John J. Bennett, Jr., Attorney-General [John L. Campbell, Assistant Attorney-General,* for the State of New York.

*H. H. Fleming,* for the New York Central Railroad Company.

Barrett, P. J. This claim is for the appropriation of four hundred and ninety-three one-thousandths acres of land for railroad grade elimination purposes and damages alleged to have been caused by the work of construction in polluting a spring located on property of the county of Delaware, but the waters of which claimants had reserved in their instrument of conveyance. Before the construction the water from the spring was clear, but afterward it was roily in rainy weather and unfit for use in claimant's summer boarding house. The value of the land taken has been agreed upon at $200, and this is the only amount, in our judgment, for which the State is liable. The spring in question was entirely fed by subterranean waters, the sources and channels of which were

unknown. So far as liability for interference with such waters is concerned, it was said in *Dillon* v. *Acme Oil Company* (49 Hun, 565): " The law controlling the rights of parties to surface streams has no application to subterranean water-courses running through unknown channels without a distinct or definite course, unless the subterranean streams have a known and well defined channel constituting a regular and constant flow of water. As to the surface streams the owner of the soil over which it passes has the right of use in the manner which we have already stated; whereas in the case of subterranean water, it belongs to the soil as a part of it; is owned and possessed as the earth is and may be used, removed and controlled to the same extent by the owner. It is only in exceptional cases that the channels of subterranean streams are known and their courses defined; it is only in such exceptional cases that the owner can know beforehand that his works will affect his neighbor's wells or supply of water, and we are, therefore, of the opinion that in the absence of negligence and of knowledge as to the existence of such subterranean water-courses, when the business is legitimate and conducted with care and skill, there can be no liability if such subterranean courses become contaminated." (See, also, *Flanigan* v. *State*, 113 Misc. 91; *Thompson* v. *Board of Education*, 124 id. 840.)

The claim is prosecuted under the Grade Crossing Elimination Act (Laws of 1928, chap. 678) which, while allowing damages to property not acquired, does not permit the creation " of any liability not already existing in law " (§ 6). No such liability existed and claimants' right to damages for the pollution of the spring can be sustained only upon the theory of negligence. There is no sufficient proof that the work of construction was not performed in a reasonably proper manner. Claimants rely in that regard almost entirely upon testimony that the spring contained pure water before the work was done, and that the water was unfit afterward. Such testimony is not sufficient to charge the State with negligence.

RYAN, J., concurs.