Marcus G. Christ, J.
This is an application by the defendant, who is also a third-party plaintiff, for an order permitting it to have certain tests made of a broken window cleaner’s safety anchor. The action arose from an accident involving a window cleaner. He claims injuries as a result of dangling by his safety belt from one safety anchor after the other allegedly defective *516 anchor to which his belt was attached broke. The window cleaner’s safety anchor is a device consisting of a bolt the major portion of which is fastened into the building with the remainder protruding from the building and terminating in a round head of a larger diameter than the rest of the bolt. It is to the head of this exposed end that the window washer attaches a fixture on his safety belt. The head and a small portion of the bolt which broke was apparently recovered after the accident and the remainder of the bolt was removed from the building. Both parts of the broken safety anchor were in the possession of the defendant and third-party plaintiff until they were impounded by the court when the trial of this action ended in a mistrial on May 17, 1956.
As originally commenced, this action was brought by the window cleaner against the owner of the building. Later, the owner of the building, as third-party plaintiff, cross-claimed against the concern which allegedly furnished and installed the safety anchors on the building. During an examination before trial the broken safety anchor was offered and received in evidence as an exhibit of the plaintiff. Upon the trial of the action the same item of evidence was received in evidence as plaintiff’s Exhibit 1. A motion was made to the trial court by the third-party plaintiff for a metallurgical examination of the broken safety anchor. The motion was denied by the trial court apparently on the ground that the application should be made at Special Term. After that ruling, the trial continued for a time but, as earlier noted, it later ended in a mistrial. At the time o'f the mistrial, on motion of the attorney for the third-party defendant, the trial court impounded the broken safety anchor which theretofore had been in the possession of the third-party plaintiff.
The owner of the building wants to have the broken safety anchor subjected to a tensile strength test, a chemical test and a microscopic examination. In addition, a fourth operation involving an alteration of the broken device from its present condition is proposed. In passing, it may be observed that although no one has questioned the suitability of the tests proposed as a means of obtaining scientific data relating to the composition and strength of the broken safety device, there is no proof presented by any one fully competent to speak that there are not other ways of carrying out the tests desired which would achieve like results, yet not involve such extensive alteration of this object of real evidence. A description of what it is proposed to do to the broken safety anchor in carrying out the tests leaves no doubt that the present condition of the safety anchor will be *517 radically altered. In order to perform the tensile strength test it is proposed to cut a five inch section from the center section of the nine and one-half inch unbroken section of the bolt. For purposes of chemical analysis of the metal, it is proposed to cut a section from the neck end of the bolt, that is, the end which protrudes outside the building. This small section would be cut off from that part of the bolt which broke off and was retrieved after the accident. To make the microscopic examination it is proposed to polish the cut surface of the neck end of the bolt exposed as a result of the cutting off of the section needed for the chemical analysis and to subject such polished surface to a microscopic examination. Finally, it is proposed that the head of the safety anchor or bolt, i.e., the part to which a window cleaner fastens his safety belt, is to be cut off from the neck of the bolt so as to preserve the head with the paint thereon.
The application to make the tests just described is resisted by the plaintiff and by the third-party defendant. Each stress the undeniable fact that the proposed testing procedures will result in the virtual destruction of an important piece of real evidence. The importance of the exhibit has been emphasized by the action of the Trial Justice in impounding it at the time of the mistrial.
The tests which the movant seeks should not be made before the trial because performance of such tests would deprive the plaintiff of the opportunity of having the broken safety device in its present condition available as evidence before the court and jury. If tests are to be made they should be deferred until the trial at which time an application may be made to the trial court for permission to make them. At that time, upon an adequate factual showing by competent persons of the precise tests deemed necessary as well as the procedures to be followed in making such tests, the court can determine whether to grant the application and if granted what safeguards should be required to protect the rights of all parties (Cardot v. Ball, 263 App. Div. 788; Scully v. Farragut Refrig. Co., 207 Misc. 798; cf. Reiss v. Kirkman & Son, 242 App. Div. 77). The plaintiff has suggested that his claim against the owner of the building be severed from the owner’s claim over against the third-party defendant so that after plaintiff’s cause of action has been disposed of the parties involved in the cross claim can mutilate the exhibit in whatever way suits them. At this time there is no application before the court for a severance of the respective causes of action and the court does not express any opinion whether, in the event a severance were had, the tests would be permitted prior to the trial of the cross claim. It is conceivable that reasons similar to those requiring the denial of the present *518 motion would make it' necessary to deny permission to make tests prior to trial of the cross claim if such tests would involve alteration of the present condition of the broken safety anchor. On the other hand, it is possible that a factual showing* might be made indicating that no such alteration would be necessarily involved in making the tests in which event the disposition made of the present motion would not be a bar to the relief sought.
The motion is denied without prejudice to an application to the trial court for the same or similar relief.
Settle order on notice.