WILLIAM B. McKINLEY ET AL.

v.

CHARLES L. SMITH, RECEIVER, ET AL.

*Fixtures—Personalty—Modification of Decree.*

In a controversy between creditors of an insolvent manufacturing company as to which of certain machines were fixtures, this court having previously reversed the decree of the court below in part and remanded the cause for further proceedings, now declines to interfere with the decree as modified.

[Opinion filed June 26, 1888.]

IN ERROR to the Circuit Court of Champaign County; the Hon. C. B. SMITH, Judge, presiding.

Mr. HENRY M. BEARDSLEY, for plaintiff in error.

The record shows that prior to December 29, 1883, the company had been a tenant on the land which on that day it

bought of Beardsley and Harbison. Having been a mere tenant, the property described in the trust deed as chattel had been up to that time considered by all as chattel. It could not have been the intention of the parties that these chattels should became fixed to the realty so as to become part of it, and the landlord thus acquire title to it. When the land was bought and a deed for it obtained, it was then competent for the company to elect to consider these chattels as fixed or not. It made the mortgage naming them still as chattels. So, in fact, they never bec me part of the realty. The courts of Illinois have held constantly, that the intention of the parties is the one matter to which they will first look to determine the character of property in this class of cases. Jones v. Ramsey, 3 Ill. App. 303 ; Smith v. Moore, 26 Ill. 392; Kelley v. Austin, 46 Ill. 156 ; Arnold v. Crowder, 81 Ill. 56 ; Ballou v. Jones, 37 Ill. 95.

The case of Eaves v. Estes, 10 Kas. 314, was an action of replevin to recover possession of a steam engine, manufactured by Estes & Co. for Koehler. Before the engine was removed by Koehler to his mill he executed a chattel mortgage upon it. Prior to the placing of the engine in the mill, the mill and lot on which it was built were mortgaged. This mortgage was afterward foreclosed and the property purchased by Eaves, the defendant, who claimed the property as part of the realty. Kingman, C. J., in delivering the opinion of the court, said: "Under the light of the adjudicated cases, and having no regard to the terms of the chattel mortgage, it may well be doubted whether it ever became part of the realty as between vendor and vendee. See Walker v. Sherman. 20 Wend. 686, etc. * * * But when we consider the purpose of the parties as evinced by the mortgage, to make the engine retain the character of a chattel, regardless of the manner of its attachment to the mill, and as the mortgage violated no principle of law, wrought no injury to the rights of others, and was in the interest of trade, we have no doubt that the engine continued to be personal property. * * * In this case the parties have declared that the engine shall retain its character of personalty; and the facts in the case do not over-

come the inference drawn from the contract. It is not an inference drawn solely from the relation of the parties, or the nature of the estate, but a positive stipulation made by the parties. The intent is not inferred from facts or left in doubt."

The deed of trust is clearly a chattel mortgage. It describes the separate pieces of machinery, etc., says that they are situated upon certain real estate, provides for possession to be retained by the mortgagor until a failure to pay, provides that the mortgage is to be renewed from time to time during the life of the debt so that it shall be at all times a valid first lien on such chattel property, and provides for possession and public sale by the trustee in case of a failure to pay.

The court below should have modified its former decree as directed. It should have found that all of the property named in the deed of trust under the head of "machinery and chattels," was, as between the parties before this court, chattel property, and that these plaintiffs in error have a first lien on all of said property under the deed to secure them for the moneys advanced upon the credit of the security offered by the deed.

Mr. J. L. RAY, for First National Bank and H. H. Harris, defendants in error.

In a manufacturing establishment where land and building are owned by the manufacturer and where machinery is permanent in its character and essential to the purpose for which the building is occupied it must be regarded as realty and passes with the building. Whatever is essential to the purpose for which the building is used will be considered as a fixture, although the connection between them be such that it may be severed without physical or lasting injury to either. Green v. Phillips, 26 Gratt. (Va.), 752; 21 Am. Rep. 323; Brennan v. Whittaker, 15 Ohio St. 446; Laflin v. Griffiths, 35 Barb. 58; McRea v. Central Nat. Bank, 66 N. Y. 489; Pierce v. George, 108 Mass. 82; Parsons v. Copeland, 38 Me. 537.

As between mortgagor and mortgagee of a large brick building, certain boilers, engines, shafting and steam pipes

for heating purposes, the latter fastened along the walls with wrought-iron spikes, were held to be a part of the realty, although called personal property in a deed and bill of sale to the mortgagor. Quimby v. Manhattan Cloth, etc. Co., 24 N. J. Eq. 260.

In a late case in Massachusetts a contest arose where the owners of a machine shop had mortgaged the real estate to one party and mortgaged the machinery in the building to another as "personal property."

It was held that "such machines and their appurtenances as were specially adapted to be used in the shop and were annexed to it, passed by the mortgage of the real estate," and that, too, when it appeared that the machines might be removed without injury to the building. Pierce v. George, 108 Mass. 78.

Other articles, which appeared not to be essential parts of the shop, were held to be personal, and went to the mortgagee of the personalty.

And where such machinery was leased to the mortgagor, and he placed it in the buildings and mortgaged the property, the machinery, although the property of another, passed under the mortgage of the realty to the mortgagee. Fryatt v. Sullivan Co., 5 Hill, 116.

These authorities show that the key to the solution of these questions is, "Were the fixtures essential to the enjoyment of the freehold? were they part of one plant and factory? are they needed to make a complete factory?" And further, in such contests the "fixed" machinery of a factory or machine shop always goes with the realty.

*Per Curiam.* This is a controversy between certain creditors of the insolvent Champaign Sugar Company, who intervened by petitions herein and presented their claim before the special master. The decree of the Circuit Court having been affirmed in part, reversed in part and remanded for further consideration and modification according to the opinion of this court [McKinley v. Smith, 25 Ill. App. 168], the only question upon this appeal is whether the modification made is in accordance with that opinion.

We found and held that Harris and the bank, by virtue of their respective judgments, had acquired the first lien on the real estate, including fixtures, described in the trust deed of the company to Langley, but not upon the personal property therein mentioned, for the reason that execution had not been taken out on said judgments or either of them, and that certain other creditors had the first lien on said personal property. We said: "Question is made as to what was personal property and what fixtures. Consisting of machinery used in connection with the building, it is difficult for us to determine, from the evidence in the record describing the several items, how to classify them. We are inclined to think the master's findings in reference to them, approved and adopted by the decree, were not correct in some instances, the fanning mill, for example, and perhaps others. But we see no inequity in holding everything as personalty that was declared by the deed to be such, as against the judgments—not because the deed is at all operative as an incumbrance prior to the judgments, but because Harris had thereby recognized those articles and machines as personal property. The intention of the board, thus manifested, to treat them as such, ought certainly to be regarded as a very weighty, if not a controlling circumstance in fixing their character."

This was the matter in respect to which the decree was to be modified. Upon further hearing the Circuit Court found that the deed does not distinguish fixtures and personal property, nor specifically declare the character of any item therein mentioned with reference to their distinction. It was not before the writer of the opinion when the passage above quoted was written, but he assumed, from the reiterated statement in the brief of counsel, without any distinct recollection of his own to the contrary, that it did so distinguish and declare. Thus, on page 21 the statement that "the property described in the trust deed as chattel property, is such in fact, and not a part of the realty" is italicized. On page 24 it is said that, "having been a mere tenant, the property described in the trust deed as chattel had been to that time considered by all as chattel," and that the tenant, after becoming the owner, "made the mortgage (trust deed), naming them still

as chattels." On page 29: "The parties advancing money then, and accepting of the bonds as collateral, did so understanding that the judgments were not, and were not to be made liens on that which, in the deed, with reference to which all parties made their agreement, was nominated as chattel." All this was said of specific items of property, and was asserted throughout the brief on that subject, as if it were not questioned, and as estopping Harris, who was a member of the board, and also the bank which he represented. Doubtless this was the belief of the counsel, to which he still adheres; but it was matter of construction and inference only.

The language of the deed is as follows, after the description of the lot: "And the following described machinery and chattels, to-wit: two three-roll four-foot cane mills and gearing, and cane and bagasse carriers connected therewith; one one hundred horse power engine used for propelling said mills; six steam boilers; five open defecators and their copper coils; two closed defecators and their copper coils; two evaporators and their copper coils; seven bone-black filters; one vacuum pan and one vacuum pump; one hundred crystalizing cars; five centrifugals and gearing and mixer; one engine used for propelling the same; fourteen iron tanks; 30,000 pounds boneblack; one bone kiln; four steam pumps; one blower; all shafting and pulleys, belts, piping and valves. All of said property being situated upon the property above described." This is all that is to be found therein from which to determine what was considered by the parties to be personal property, and what, if any, fixtures. The order of the board on which the deed was prepared, and which is quoted in the opinion, certainly shows they considered some of these articles fixtures.

We think, with the court below, that while the deed imports that some may be or are chattels, it does not declare all, or any of them specifically, to be such, and therefore leaves the character of each to be determined by proof *aliunde*.

The special master, as directed by the order of reference, reported the proofs and his conclusions thereon, and found that all the engines, cane mills, mixers, gearing for centrifugals, filters, the bone kiln, vacuum pan, steam pipes, shafting, hay

scales and all machinery used about the sugar house, except defecators, copper coils for same, evaporators, copper coils for same, steam pipe connecting same, two wooden juice tanks, two wooden water tanks, fourteen iron tanks, two wooden iron-lined tanks, seven iron filters, one hundred crystalizing cars, one juice pump and one hot water pump, are attached to and part of the real estate, and this finding was approved by the court below.   We thought it evidently erroneous as to the fanning-mill, and not improbably so as to some other articles; but to us much of the machinery mentioned was unfamiliar, and the testimony in regard to its attachment to the building or soil, and its use in the process of making sugar or syrup, not entirely clear; while the master and chancellor, being on the ground, were in better condition to understand and appreciate it.   Therefore, since the decree was certainly to be modified as to the fanning mill, we desired the court to reconsider it as to the other articles, and especially with reference to the weight to be given to the supposed characterization of them by the deed of trust.   This has now been done, and on such reconsideration upon the evidence, including said deed, and further argument of counsel, the chancellor has seen no sufficient reason for modifying his original findings except as to the fanning mill; and, while the law is difficult of application as to some other of these articles, we are not prepared to hold he has erred in respect to them.

The decree, as modified, will therefore be affirmed.

*Decree affirmed.*